## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MARCUS TROTTER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC; EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. AND | ) | |
| TRANSUNION LLC, | ) | **DEMAND FOR TRIAL BY JURY** |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Marcus Trotter ("Plaintiff"), and with knowledge as to Plaintiff's acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action for actual, statutory and punitive damages, costs and attorneys' fees pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, against Defendants Equifax Information Services LLC; Experian Information Solutions, Inc. and TransUnion LLC.

2.    Congress, when it enacted the FCRA in 1970, mandated the existence and use of reasonable procedures to assure the maximum accuracy of the personal and financial information concerning consumers compiled and sold to users by consumer reporting agencies ("CRAs").

3.    On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").

This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

4.    The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[2]

5.    Toward this end, Congress provided "powerful new tools" to consumers, including the right to dispute information due to fraud, obtain free credit reports due to identity theft and the right to request the truncation of Social Security numbers on consumer disclosures (commonly referred to as credit reports).

6.    FACTA also imposes additional duties on consumer reporting agencies to repair the damage done to identity theft victims' credit files by blocking information that is the result of identity theft.

7.    Since the 1990s, the Federal Trade Commission (FTC) FCRA and numerous state attorney generals have taken enforcement action against the nationwide consumer reporting agencies (NCRAs) for violations of the FCRA.[3]

---

[1]    http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html    Last visited February 8, 2018.

[2]    Pub. L. No. 108-159 (2003)  http://www.gpo.gov/fdsys/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf   Last visited February 8, 2018.

[3] *See Equifax Credit Information Services, Inc.*, 130 F.T.C. 577 (1995) (consent order); *U.S. v. Equifax*, Civ. No. 00-0087 (N.D. Ga. 2000); *In the Matter of Experian, Equifax and Trans Union*, Settlement Agreement with Attorney General of the State of New York (Mar. 8, 2015); *State of Mississippi, et al. v. Experian Info. Solutions, Inc., et al*; Case No. 1:14-cv-00243 (S.D. Miss.)(settlement agreement); May 20, 2015 NCRAs Settlement with 31 Attorney Generals, including Attorneys General of Alabama, Alaska, Arizona, Arkansas, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan,

8.    Against this backdrop, credit report errors remain a major problem for identity theft victims, including Plaintiff.

<u>JURISDICTION & VENUE</u>

9.    This Court has jurisdiction of this action for violations of the FCRA pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10.    Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(c) and a resident of this judicial district.

11.    Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district. Equifax is a NCRA as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation. Equifax outsources business processes, including consumer disputes, to other countries, such as India, Philippines and Costa Rica. One of Equifax's dispute vendors is Intelenet.

12.    Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in California. Experian does business in this judicial district. Experian is a NCRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to

---

Missouri, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, and Wisconsin)(the NCRAs agreed to the agencies a total $6 million and comply with the FCRA).

third parties.  Experian disburses such consumer reports to third parties of contract for monetary compensation.  Experian outsources business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

13.     Defendant TransUnion LLC ("Trans Union") is a Delaware corporation with its principal place of business in the state of Illinois.  Trans Union does business in this judicial district. Trans Union is a NCRA as defined by 15 U.S.C. § 1681a(f).  Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Trans Union disburses such consumer reports to third parties of contract for monetary compensation. Trans Union outsources business processes, including consumer disputes and disclosures, to other countries, such as India.  One of Trans Union's dispute vendors is Intelenet.

14.     Experian, Equifax and Trans Union are referred to collectively as the "Defendants" throughout the complaint.

## FACTUAL ALLEGATIONS

15.     Plaintiff is a victim of identity theft.

16.     Upon information and belief, an impostor used Plaintiff's personal identifying information to apply for and open accounts without Plaintiff's authorization or consent.

17.     Defendants knew Plaintiff believed he was a victim of fraud.

18.     The inaccurate information reported by Defendants includes, but may not be limited to, accounts with: Credit Protection Association/Mediacom; Department of Education/Nelnet; ERC/ATT; Stellar Recovery/Comcast; and the U.S. Department of Education.  The inaccurate information also includes names, such as Marques Protter, and various addresses that do not belong to Plaintiff.

4

19.    Plaintiff reported the fraud to the Creola Police Department.

20.    The Creola Police Department categorized the type of incident or offense as "Identity Theft."

21.    The information reported by Defendants is false because Plaintiff did not open accounts with the persons described above

22.    Notwithstanding, Equifax reported:

a. each of the Department of Education/Nelnet loans belonged to Plaintiff and had a derogatory payment status of over 120 days past due; and

b. the U.S. Department of Education accounts belonged to Plaintiff and had a derogatory payment status as "collection" accounts.

23.    Likewise, Experian reported:

a. the Credit Protection Association account belonged to Plaintiff and derogatory "collection" account with $641 past due;

b. the Department of Education/Nelnet accounts belonged to Plaintiff and with the derogatory late payment history - 180 days past due;

c. a derogatory "collection" account with ERC (on behalf of ATT) belonged to Plaintiff and $1,600 past due;

d. a derogatory "collection" account with Stellar Recovery Inc. (on behalf of Comcast) belonged to Plaintiff and $231 past due;

e. derogatory accounts with the Department of Education belonged to Plaintiff and had past due amounts in the amount of $61, $2,377,  $1,916 and $958.

24.    Experian also sold Plaintiff's credit information to persons who did not have a permissible purpose to obtain Plaintiff's consumer report, such as Credit Management, LP on or

around April 29, 2017.

25.     Similarly, and upon information and belief, Trans Union reported the inaccurate information described above.  No less than six times, Plaintiff made written requests to Trans Union to provide him with his report. He also disputed the inaccurate information to Trans Union. In support, Plaintiff supplied Trans Union with personal identifying information and documents sufficient to verify his identity, including, but not limited to name, date of birth, social security number, address, notarized letter from the City of Creola, a completed Trans Union Disclosure Request Form, W-2 Wage statement, letter from the State of Alabama Department of Revenue, birth certificate, and identity theft report from the Creola Police Department.

26.     Notwithstanding, Trans Union failed to provide Plaintiff with his consumer disclosure, delete the disputed information or reinvestigate any of the disputed information.

27.     The inaccurate information negatively reflects on Plaintiff's credit history, financial responsibility as a debtor and credit worthiness.

28.     Equifax prepared and issued credit reports concerning Plaintiff that included the inaccurate information.  Plaintiff notified Equifax that he disputed the accuracy of the information Equifax was reporting.  Equifax did not delete the disputed information.  Plaintiff asked Equifax to provide him with the steps it undertook while reinvestigating the disputed information.  On at least one occasion, Equifax failed to provide Plaintiff with the steps it undertook pertaining to the reinvestigation of disputed information.  Plaintiff requested Equifax to send him credit report with the first five digits redacted.  On at least two occasions, Equifax failed to redact the first five digits of Plaintiff's Social Security number.  Plaintiff supplied Equifax with an identity theft report.  On at least one occasion, and after receipt of an identity theft report, Equifax failed to: (1) block the disputed information; (2) notify Plaintiff that it declined to block the disputed information;  (3)

6

notify the plaintiff of the business name and address of any furnisher contacted and the phone number of the furnisher contacted by Equifax in connection with its refusal to block; and (4) notify Plaintiff that he had the right to add a statement to his file disputing the accuracy or completeness of the disputed information. Equifax failed to block the disputed information after receipt of an identity theft report.

29.    Experian prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Plaintiff notified Experian that he disputed the accuracy of the information Experian was reporting. Experian did not delete all of the inaccurate information from Plaintiff's file. Plaintiff supplied Experian with an identity theft report in support of his disputes. On at least one occasion, and after receipt of an identity theft report, Experian failed to: (1) block the disputed information; (2) notify Plaintiff that it declined to block the disputed information;  (3) notify the plaintiff of the business name and address of any furnisher contacted and the phone number of the furnisher contacted by Experian in connection with its refusal to block; and (4) notify Plaintiff that he had the right to add a statement to his file disputing the accuracy of completeness of the disputed information. On at least one occasion, Experian sold Plaintiff's consumer report without a permissible purpose.

30.    Trans Union prepared and issued credit reports concerning Plaintiff that included the inaccurate information. Plaintiff notified Trans Union that he disputed the accuracy of the information Trans Union was reporting. Plaintiff asked Trans Union to provide him with the steps it undertook while reinvestigating the disputed information. On at least one occasion, Trans Union failed to provide Plaintiff with the steps it undertook pertaining to the reinvestigation of disputed information. Plaintiff supplied Trans Union with an identity theft report in support of his disputes. On at least one occasion, and after receipt of an identity theft report, Trans Union failed to: (1)

block the disputed information; (2) notify Plaintiff that it declined to block the disputed information; (3) notify the plaintiff of the business name and address of any furnisher contacted and the phone number of the furnisher contacted by Trans Union in connection with its refusal to block; and (4) notify Plaintiff that he had the right to add a statement to his file disputing the accuracy of completeness of the disputed information. Plaintiff requested Trans Union to provide him with his consumer disclosure. On at least one occasion, Trans Union failed to provide Plaintiff with his consumer disclosure after receipt of his request. Plaintiff requested Trans Union to provide him with his consumer disclosure due to fraud. On at least one occasion, Trans Union failed to provide Plaintiff with his consumer disclosure due to fraud after receipt of his request. Plaintiff requested Trans Union to provide him with his consumer disclosure due to fraud and provided Trans Union with an identity theft report. On at least one occasion, Trans Union failed to provide Plaintiff with his consumer disclosure after receipt of his request and an identity theft report.

31.     In connection with any reinvestigation of the disputed information, Defendants did not:

       a.   contact third parties, including but not limited to the Creola Police Department, concerning the accuracy of the disputed information;

       b.   review underlying account documents, such as the application for credit;

       c.   conduct any handwriting analysis on Plaintiff's signature or the signature on the account application despite receipt of handwriting samples from Plaintiff;

       d.   make a reasonable inquiry into the disputed information; and

       e.   review all relevant information provided by Plaintiff pertaining to his disputes.

32.     At best, Defendants parroted the false information when each confirmed the data

furnishers' responses (if any) conformed with the information contained in Plaintiff's file.

33.    As a result of Defendants' failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including damage to credit reputation, reduction in credit score, out-of-pocket expenses, invasion of privacy, deprivation of access to information, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

34.    At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

35.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

36.    Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law for their violations of the FCRA.

37.    Plaintiff's damages are unique and particularized to each defendant.

### FIRST CLAIM FOR RELIEF
(against Equifax)
(Negligent Noncompliance with FCRA)

38.    Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

39.    Equifax negligently failed to comply with the requirements of the FCRA.

40.     As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages as described more fully above.

41.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

SECOND CLAIM FOR RELIEF
(against Equifax)
(Willful Noncompliance with FCRA)

42.     Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

43.     Equifax willfully failed to comply with the requirements of the FCRA.

44.     As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages as described more fully above.

45.     Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

46.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

THIRD CLAIM FOR RELIEF
(against Experian)
(Negligent Noncompliance with FCRA)

47.     Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

48.     Experian negligently failed to comply with the requirements of the FCRA.

49.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages as described more fully above.

50.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

FOURTH CLAIM FOR RELIEF
(against Experian)
(Willful Noncompliance with FCRA)

51.     Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

52.     Experian willfully failed to comply with the requirements of the FCRA.

53.     As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages as described more fully above.

54.     Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

55.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

<u>FIFTH CLAIM FOR RELIEF</u>
(against Trans Union)
(Negligent Noncompliance with FCRA)

56.     Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

57.     Trans Union negligently failed to comply with the requirements of the FCRA.

58.     As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages as described more fully above.

59.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

<u>SIXTH CLAIM FOR RELIEF</u>
(against Trans Union)
(Willful Noncompliance with FCRA)

60.     Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

61.     Trans Union willfully failed to comply with the requirements of the FCRA.

62.     As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages as described more fully above.

63.     Plaintiff also seeks statutory and punitive damages in an amount to be determined by the jury.

64.     Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

65.     Plaintiff requests a jury trial on all issues so triable.

<u>PRAYER</u>

WHEREFORE, Plaintiff seeks judgment against Defendants, as follows:

On the First Claim for Relief:

1.     Actual damages to be determined by the jury;

2.     Attorneys' fees;

3.     Costs and expenses incurred in the action;

On the Second Claim for Relief:

1.     Actual damages to be determined by the jury;

2.     Statutory and punitive damages to be determined by the jury;

3.     Attorneys' fees; and

4.     Costs and expenses incurred in the action.

On the Third Claim for Relief:

1.     Actual damages to be determined by the jury;

2.     Attorneys' fees;

3.     Costs and expenses incurred in the action;

On the Fourth Claim for Relief:

1.     Actual damages to be determined by the jury;

2.     Statutory and punitive damages to be determined by the jury;

3.     Attorneys' fees; and

4.      Costs and expenses incurred in the action.

On the Fifth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Attorneys' fees;

3.      Costs and expenses incurred in the action;

On the Sixth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Statutory and punitive damages to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs and expenses incurred in the action.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
(S.D. Ala. Bar No. adkim8639)
**THE ADKINS FIRM, P.C.**
7100 Executive Center Drive, Suite 110
Brentwood, Tennessee 37027
Telephone:    (615) 370-9659
Facsimile:     (615) 370-4099
Email: MicahAdkins@ItsYourCreditReport.com
*Representing Plaintiff*